Kevin Kneupper, Esq. (CA SBN 325413)
Kneupper & Covey, PC
4475 Peachtree Lakes Dr.
Berkeley Lake GA 30096
512-420-8407
kevin@kneuppercovey.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CUMMINGS,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>JOHN DOE 1-10,<br><br>　　　Defendants | Case No.: 2:19−cv−08766 DMG (AGRx)<br><br>**PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE – DISCOVERY MATTER** |

## I.   INTRODUCTION

Plaintiff Stephanie Cummings ("Plaintiff"), by and through her attorneys, brings this *Ex Parte* Motion for Leave to Take Limited Discovery Prior to a Rule 26(f) Conference pursuant to Federal Rule of Civil Procedure 26(d), on the grounds that Mrs. Cummings has made a prima facie showing of her claims relating to the Defendants' deceptive marketing practices and operation of an illegal "free trial" scam, and without the expedited discovery, Mrs. Cummings will be unable to identify the Defendants with sufficient particularity to effect service of process or to obtain redress for their tortious and unlawful conduct.

The John Doe Defendants here are the operators of a "free trial" scam—an increasingly common form of fraud on the Internet. *See* Dkt. 1. The Defendants created fake news articles claiming that their skin cream product, "Immortelle Youth," was the official product of Meghan Markle, an actress and member of the royal family of the United

Kingdom. Claiming that their products had been endorsed by various other celebrities including the cast of Shark Tank, the Defendants directed their victims, including Mrs. Cummings, to a website claiming that they would receive a free trial of Mrs. Markle's skin cream if they provided their credit card number and paid a small shipping fee.

In fact, Mrs. Markle, Shark Tank, and the various other celebrities have no connection to the Defendants' product. And the "free trial" was anything but free—just a few short weeks after signing up, the victims would find their credit cards being billed hundreds of dollars for products they did not agree to purchase. To make matters worse, the Defendants committed bank fraud by creating a fake version of their website to provide to any banks who investigated. When customers complained and banks contacted the Defendants, they pointed those banks to this fake website—a completely different website than what their victims viewed and which was designed to appear as if consumers had provided consent to be billed. In actuality, the Defendants' victims viewed a scam landing page which made no disclosures that they would be billed and which claimed that the only amount that would be paid was a shipping cost of roughly $5. By defrauding the banks, the Defendants prevented Mrs. Cummings and other members of the proposed class action from obtaining refunds.

As outlined in the complaint, this is a common scam, and Defendants have gone to great lengths to hide their identities. This is not surprising given the heavy penalties they would face if their fraud were discovered. Despite exhausting traditional avenues for identifying Defendants pre-service, Plaintiffs cannot identity the Defendants with whom to confer until the requested discovery takes place. Kneupper Decl. at 1-4.

Rule 6(c)(1)(C) of the Federal Rules of Civil Procedure, relating to times for filing motions and setting hearings, provides that for good cause a party may apply *ex parte* for setting a different time to file a motion with respect to a hearing date. As outlined below, Plaintiff has attempted to contact the John Doe(s) regarding this lawsuit and regarding the instant motion, but without receiving a response. Because there is currently no Defendant

in this case to oppose any motion, or upon whom to serve a copy of a motion, there would be no opposition. Therefore, no briefing schedule need be set.

## II.     FACTUAL BACKGROUND

Plaintiff Stephanie Cummings, having been injured by one or more John Doe Defendants who billed her credit card without permission after she signed up for a free trial of the Immortelle Youth product, now seeks to sue those John Doe(s) and pursue a class action against them on behalf of others who were similarly defrauded. But other than a phone number and a Post Office box, these John Doe(s) did not disclose any contact information for themselves on the websites they were using to scam consumers.

As outlined in the Complaint, as well as in the Better Business Bureau report attached thereto at Docket 1, Exhibit 1, the "free trial" scam Mrs. Cummings fell victim to is a common one with a common structure. The Defendants here can be expected to consist of at least a John Doe "affiliate" (the operator of the website claiming that Immortelle Youth was endorsed by Meghan Markle and Shark Tank), a John Doe who created the websites for the Immortelle Youth product and created the product itself, a John Doe fulfillment company (who manufacturers and delivers the product), and a John Doe "crooked processor" who assists in preventing the creator of the product from being discovered by banks and credit card companies.

Counsel for Plaintiff has diligently attempted to discover the identities of John Does 1 through 10, who Plaintiff believes are responsible for the tortious conduct relating to the Immortelle Youth product. Counsel has investigated the websites relating to these products, including a review of their source code, and has investigated publicly available data relating to these sites including an analysis of server and hosting data. Kneupper Decl., ¶ 3-4.

On October 11, 2019, Counsel sent an e-mail with the complaint attached to support@immortelleyouth.com, the e-mail listed as the contact information (and currently the only known functional contact information for any John Doe). Kneupper Decl., ¶ 5.

Also on October 11, 2019, Counsel called the contact number listed on that website, (800) 641-0159. Kneupper Decl., ¶ 6. Counsel identified himself as an attorney, stated that a lawsuit had been filed regarding Immortelle Youth, and requested to be put into contact with the attorneys for that company. *Id.* at ¶ 6. The individual who answered the phone requested time to speak to a manager, and after doing so informed Counsel that he worked at a third party call center but that they would inform the Immortelle Youth company and provide them with Counsel's contact information. *Id.* at ¶ 6. The individual did not otherwise identify themselves or the name of the call center.

On October 12, 2019, Counsel sent a copy of the complaint and a cover demand letter via certified mail to the P.O. Box listed as the contact address in the terms of service on immortelleyouth.com, P.O. Box 52022, Phoenix AZ 85072. Kneupper Decl., ¶ 7. That copy of the complaint was delivered on October 16, 2019. Ex. 1.

On October 15, 2019, unknown individuals began issuing refunds to the account of Plaintiff Stephanie Cummings, and e-mails were sent to her from the support@immortelleyouth.com e-mail address regarding those refunds. Ex. 2.

On October 17, 2019, Counsel e-mailed the Initial Standing Order to the support@immortelleyouth.com e-mail address, and again requested that the John Doe(s) contact him. Counsel received no further response. Kneupper Decl., ¶ 9.

On October 30, 2019, Counsel retained a private investigator in an attempt to identify the Defendants, but without success. Kneupper Decl., ¶ 10.

On December 2, 2019, after determining that no further investigative efforts would be fruitful, Counsel forwarded a copy of a draft of the instant motion to the support@immortelleyouth.com e-mail address, but has received no response. Counsel does not expect one—a few days after sending the e-mail, the immortelleyouth.com website was removed from the Internet. Kneupper Decl., ¶ 11.

While it is clear from the refunds that at least one John Doe Defendant has received a copy of the complaint, there is no other apparent way to contact the other John Does. There has been no settlement offer made and no effort besides a refund to address the other

relief demanded by Mrs. Cummings, including among other things certification of a class action and damages for the class, punitive damages, attorney's fees, declaratory relief, and injunctive relief. Dkt. 1 at 62. The refunds do not moot Mrs. Cummings' right to seek these additional forms of relief, which remain live and unaddressed. *Chen v. Allstate Ins. Co.*, 819 F. 3d 1136, 1144 (9th Cir. 2016) ("As we read *Campbell-Ewald*, a lawsuit — or an individual claim — becomes moot when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation.") (emphasis in original); *id.* at 1147 ("[W]hen a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.").

While it is apparent that at least one John Doe is aware of and monitoring this lawsuit, it is unclear whether any of the others have received notice. As explained in the Complaint, the Defendants have gone to great lengths to hide their identity due to the illegality of their conduct. However, there are a number of third parties who the Defendants have interacted with as part of the operation of their "free trial" scam. Plaintiffs have selected a limited subset of these third parties which it believes may have identifying information that could expose the names of the John Doe Defendants, and requests leave to subpoena them for relevant documents.

### III.   ARGUMENT

#### A. Standards for Granting Expedited Discovery

Rule 26(d) of the Federal Rules of Civil Procedure provides that a party may not seek discovery from any source before the party has conferred as required by Rule 26(f), unless such discovery is authorized by, *inter alia*, a court order. Fed. R. Civ. Proc. 26(d). Courts in this circuit apply the conventional "good cause" standard in determining whether expedited discovery is warranted under Rule 26(d). *See, e.g., Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found

where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276.

According to the Ninth Circuit, "where the identity of alleged defendants will not be known prior to the filing of a complaint[,]…the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). To determine whether a plaintiff established good cause in the context of Doe defendants, courts consider whether the plaintiff has: (1) identified the Doe defendant with sufficient specificity as a real person who can be sued in federal court; (2) recounted the steps taken to locate and identify the defendant; (3) shown that the action can survive a motion to dismiss; and (4) established that the discovery is reasonably likely to lead to identifying information that will permit service of process. *Dhillon v. Does 1-10*, No. C 13-1465 SI, 2013 WL 5367783, at *1 (N.D. Cal. Sept. 25, 2013) (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).

As explained below, the Plaintiffs have met these standards.

### B. Plaintiff Has Identified the Defendants With Sufficient Specificity

The four-part good cause test requires a plaintiff to "identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court," in order "to ensure that federal requirements of jurisdiction and justiciability can be satisfied." *Columbia Ins. Co, supra*, 185 F.R.D. at 578.

The Plaintiff has met this standard. As described in detail in the Complaint and in Exhibit 1 thereto, the Better Business Bureau has studied the "free trial" scams at issue in this case and concluded that they are generally run by four separate categories of individuals or entities working together: (1) the affiliate or affiliate network; (2) the creator of the product who runs the product website; (3) the fulfillment company; and (4) the "crooked processor." Dkt. 1 at 6-7; Dkt. 1, ex. 1.

As alleged in the complaint, there is at least one John Doe who fits category two, the individual or entity who created Immortelle Youth and who operates the immortelleyouth.com and tryimmortelleyouth.com websites, both registered by the same person. Dkt. 1 at 9, ¶ 27. That person or entity exists, has been provided with a copy of the complaint, has since sent form e-mails and refunds to Mrs. Cummings, but otherwise is intentionally remaining in hiding.

There further appears to be a separate "affiliate" John Doe who fits category one, the individual or entity who created and operates the eonline.article-news.online website, which was registered on a separate date from the other two websites. Dkt. 1 at 10, ¶ 32.

Similarly, someone must have manufactured the product and fulfilled the orders, and as alleged in the Complaint, this is generally done through a separate company called a fulfillment company. Dkt. 1 at 6-7, ¶ 20. As described in the Better Business Bureau report: "the only address victims may have is the address of the fulfillment company. But those addresses may end up being post office boxes or mail boxes etc. and not the actual location of the warehouse." Dkt. 1, ex. 1 at 9. Here, just as predicted by the Better Business Bureau, the only address provided to the victims here was a Post Office box.

Whether there is a "crooked processor" here is currently unknown, but that information would likely have to be obtained directly from the other John Does after they are identified.

### C. Plaintiff Has Identified All Steps Taken to Locate and Identify the Defendants

Plaintiff has made numerous good faith efforts to specifically identify the Defendants in order to serve them with process, including by taking the following steps: (1) e-mailing a copy of the complaint to the support@immortelleyouth.com contact address; (2) sending a copy of the complaint via certified mail to the Post Office box listed for returns on the immortelleyouth.com website; (3) calling the number listed on the immortelleyouth.com website as a contact number; (4) conducting a technical analysis of

all publicly available information relating to the websites; and (5) retaining a private detective.

The tryimmortelleyouth.com website contained landing pages that Plaintiffs were unable to access at the time of attempted contact because the Defendants intentionally housed them on landing pages without any links to them, such that they could only be found by customers who viewed an advertisement. After successfully contacting the John Doe at the immortelleyouth.com website e-mail address and providing them with the complaint, it appears that this John Doe committed spoliation by deleting the tryimmortelleyouth.com website entirely. Whereas previously attempting to access the site's home page returned a 403 error (a response from a computer server indicating that the user does not have permission to access a particular page on a live website), the website subsequently did not connect to a server at all (meaning whatever website was previously there is no longer live and has been removed entirely). Kneupper Decl., ¶ 14. After informing the John Doe that the instant motion would soon be filed, the immortelleyouth.com website, which was previously accessible, now returns a 403 error. And the tryimmortelleyouth.com website, which prior to the most recent contact attempt was removed entirely, now again returns a 403 error.

The non-technical version of the above is that the John Doe has been removing and altering the websites in response to Counsel's communications with them. Fortunately video evidence of the landing pages consumers viewed remains, but it does not provide any additional contact information. The same John Doe appears to have attempted to make evidence regarding their identity unavailable in this lawsuit by a post-notice decision to shift its domain registrar to a foreign company located out of Panama. Kneupper Decl., ¶ 13.

Counsel is unaware of any other methods short of a subpoena by which the Defendants may be located and identified. There is additional information relating to a company in Nevada in the source code and Privacy Policy for the immortelleyouth.com website, but after examining the server information and the domain registration

information relating to other websites associated with that company, Counsel is unable to determine whether this company is a John Doe Defendant or an entirely separate scammer whose website source code was copied by the Immortelle Youth John Doe. As outlined in the Complaint, there is no honor among thieves, and copying each other's webpages is frequent and makes identification of who is behind any particular website more difficult. Dkt. 1 at 15-16. The address at issue is only visible in hidden text in the source code, and as such could easily have been missed by one scammer who copied the code of another, as could the company name in a privacy policy.

Counsel considered this company as a subpoena target, but given the spoliation that has already occurred, it is highly unlikely that a subpoena to this company would produce any meaningful results. The company is run by a disgraced former California attorney who resigned from the state bar after disciplinary proceedings were initiated against him. If the company is in fact the John Doe scammer at issue here, any John Doe with this background and a demonstrated willingness to commit bank fraud and destroy evidence would simply claim in response to the subpoena that it had no relevant documents, and that statement could not be disproven absent resort to third party subpoenas anyway. If it is a separate scammer with no connection to Immortelle Youth, the company would have no relevant documents. While it is not dispositive as to the question, the Nevada company's known websites are hosted on different servers than the Immortelle Youth website and had different registrars. It is possible that the company at issue has changed its domain host and web servers specifically for the Immortelle Youth product (which again is not uncommon), but that cannot be determined absent a third party subpoena or cooperation from the scammer(s) who are currently hiding from Counsel and appear to be committing spoliation.

### D. Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss

Plaintiff can establish that her suit against Defendants could withstand a motion to dismiss, and has clearly made "some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features

of the person or entity who committed that act." *Columbia Ins. Co, supra*, 185 F.R.D. at 580.

Once the John Does have been identified, it is unclear on what basis a motion to dismiss could even be made. The John Doe who created Immortelle Youth and operated the "false front" website and the John Doe who operated the "Shark Tank" site surely have no basis to move to dismiss, as they directly operated websites containing misrepresentations, and the complaint contains a detailed enumeration of these misrepresentations.

Perhaps the John Doe fulfillment company could argue that they had no knowledge of this scheme, but they cannot do so on a motion to dismiss. Given the Better Business Bureau study and the allegations in the complaint, and assuming the facts as pled to be true, Plaintiff will at least be entitled to discovery. It is further likely that once their identity is known, additional evidence of their knowledge of and participation in the scheme will become apparent. Often these companies are inundated with online complaints and negative reviews from various scams they have shipped products for. This scam is well-known in the industry, and legitimate fulfillment companies have screening procedures to avoid involvement with scammers. Certainly they would have known at some point, because they would be receiving returned products and customer complaints. And it is highly unlikely that they would go to these lengths to hide their identity if they were truly an innocent party—they used a P.O. box, did not identify themselves on the product label, and have made it impossible to contact or identify them.

### E. Requested Subpoenas

While there are a number of potential third parties the Plaintiff could subpoena for information regarding the John Does, the Plaintiff has attempted to restrict the subpoenas in the instant motion in order to avoid unnecessarily burdening third parties, while balancing its need to obtain information before it is deleted by the John Does. If one of the subpoenas successfully identifies a John Doe, then Plaintiffs will be able to discover information directly from that Doe regarding the other Does.

Plaintiff requests to serve document subpoenas on four companies that the John Does have interacted with: NameCheap Inc., Cloudflare Inc., Amazon Inc., and International Association of Better Business Bureaus, Inc. As to each of these companies, the discovery is reasonably likely to lead to identifying information that will permit service of process.

NameCheap Inc. is the company which was used to register all three of the domain names identified in the complaint: tryimmortelleyouth.com; immortelleyouth.com; and article-news.online. Kneupper Decl., ¶ 17. NameCheap Inc. further appears to have acted as the host for these domains during at least some of the period at issue. Kneupper Decl., ¶ 17. As such, the company is likely to have identifying information regarding the John Doe responsible for creating Immortelle Youth and at least one John Doe affiliate.

Cloudflare Inc. is a web hosting company which appears to have hosted all three of the domain names identified in the complaint for at least some of the period at issue. Kneupper Decl., ¶ 18. As such, the company is likely to have identifying information regarding the John Doe responsible for creating Immortelle Youth and at least one John Doe affiliate.

Amazon Inc. acted as the mail server host for two of the websites at issue, tryimmortelleyouth.com and immortelleyouth.com. Kneupper Decl., ¶ 19. As such, the company is likely to have identifying information regarding the John Doe responsible for creating Immortelle Youth. Amazon Inc. further offered several of the products at issue for sale via third party merchants, and thus would have identifying information regarding whoever the third party or parties were who was selling Immortelle Youth products through Amazon. Counsel expects that this third party will be either the John Doe responsible for creating Immortelle Youth or the John Doe fulfillment company.

International Association of Better Business Bureaus, Inc. is the Better Business Bureau ("BBB") entity which operates the BBB's primary website, bbb.org. An unknown individual repeatedly commented on behalf of Immortelle Youth on the BBB's website, relying on the "false front" website identified in the complaint to falsely respond to customer complaints by alleging that the customers had consented to the free trials at issue.

Kneupper Decl., ¶ 19. The Internet Protocol address of this commenter could be used to subpoena identifying information about them from their Internet Service Provider. There are further comments by an unknown individual believed to be associated with the Nevada corporation described above. Kneupper Decl., ¶ 19. To the extent the Internet Protocol addresses of these commenters match, it would prove that this company was in fact behind the Immortelle Youth scam.

Plaintiff has attached drafts of the proposed subpoenas as exhibits 3, 4, 5, and 6. If these subpoenas identify any of the John Does, then Plaintiff can pursue further information about the other Does from them directly. If only IP addresses are available, Plaintiff expects that a second round of subpoenas would be necessary which would need to be directed at the John Does' Internet Service Providers.

## IV.  CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that this motion be granted, and that the Court enter an order substantially in the form of the Proposed Order filed concurrently herewith.

DATED: December 9, 2019                           Respectfully submitted,

**KNEUPPER & COVEY, PC**

 /s/Kevin M. Kneupper

Kevin M. Kneupper, Esq.

*Attorneys for Plaintiff Stephanie Cummings and the putative Class*