1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
4475 Peachtree Lakes Dr.
Berkeley Lake, GA 30096
Kevin@kneuppercovey.com
Tel: (512) 420-8407

*Attorneys for Plaintiff*
*Stephanie Cummings*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CUMMINGS,<br><br>                              Plaintiff,<br><br>v.<br><br>RALPH EMERSON WYER, et. al,<br><br>                              Defendants. | Case No.:  2:19-CV-08766-DMG(AGRx)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT KINKAR SAHA'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(2) AND 12(b)(6) [DKT NO. 68]**<br><br>[Declaration of Kevin M. Kneupper filed concurrently herewith]<br><br>**Date:**   October 16, 2020<br>**Time:**   9:30 a.m.<br>**Ctrm:**   8C, 8th Floor<br>**Judge:**   Hon. Dolly M. Gee<br><br>Complaint Filed:  October 11, 2019 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  ARGUMENT .................................................................................................... 1

  A.   Personal Jurisdiction is Appropriate as to Kinkar Saha ........................ 1

    1.   Kinkar Saha's Role .......................................................................... 2

    2.   The CodeClouds Defendants are Alter Egos of One Another ......... 4

    3.   Kinkar Saha is Subject to Specific Jurisdiction ............................. 5

    4.   Jurisdiction Is Proper Under FRCP 4(k)(2) ................................... 11

    5.   Jurisdictional Discovery is Proper If the Court Finds No Prima
         Facie Case ...................................................................................... 11

  B.   The SAC Does Not Violate Rule 8(a) .................................................. 12

  C.   The SAC was pled with particularity under Rule 9(b) ......................... 14

  D.   This Court has subject matter jurisdiction because Plaintiff has
       not received all the relief that could be granted. ................................. 18

  E.   Plaintiff has stated a valid claim under the UCL/FAL ......................... 19

  F.   Plaintiff satisfies the "transaction" requirement of the CLRA ............ 19

  G.   A post-suit refund cannot moot Plaintiff and the Class's CLRA claims. .......... 21

  H.   Plaintiff properly pled the RICO claim. .............................................. 21

  I.   A private right of action exists under the California Automatic
       Renewal Law. ...................................................................................... 23

  J.   Plaintiff acknowledges binding 9th Circuit authority on the EFTA claim. ....... 23

  K.   Plaintiff properly pled a nationwide consumer class. .......................... 24

    1.   Defendants failed to conduct a choice-of-law analysis. ................ 24

    2.   This is a class certification issue, not a standing issue. ................ 24

  L.   Conspiracy and Aiding and Abetting are valid causes of action. ........ 25

III. CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Hylands, Inc.*,
  No. CV 12-01150 DMG (MANx), 2012 U.S. Dist. LEXIS 61606
  (C.D. Cal. May 2, 2012)........................................................................24

*Am. Gen. Life Ins. Co. v. Fernandez*,
  No. CV 09-03198 DDP (SSx), 2009 U.S. Dist. LEXIS 139629
  (C.D. Cal. Oct. 20, 2009) ....................................................................25

*AMA Multimedia, Ltd. Liab. Co. v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ...............................................................9

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) .............................................................14

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010) ...............................................................7

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016) ..........................................................................18

*Chamberlan v. Ford Motor Co.*,
  No. C 03-2628 CW, 2003 U.S. Dist. LEXIS 27912  (N.D. Cal. Aug. 6, 2003)............20

*Chen v. Allstate Ins. Co.*,
  819 F.3d 1136 (9th Cir. 2016) .............................................................19

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ...............................................................20

*Coffelt v. Kroger Co.*,
  No. EDCV 16-1471 JGB (KKx), 2017 U.S. Dist. LEXIS 231262
  (C.D. Cal. Jan. 27, 2017) ....................................................................19

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) .............................................................11

*Concha v. London*,
  62 F.3d 1493 (9th Cir. 1995) ...............................................................15

*Corcoran v. Yorty*,
  347 F.2d 222 (9th Cir. 1965) ...............................................................13

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ...............................................................1

*Dickert v. Sanyo Energy (U.S.A.) Corp.*,
  No. 18-cv-04664-EMC, 2019 U.S. Dist. LEXIS 39871
  (N.D. Cal. Mar. 12, 2019) ............................................................................ 12

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ......................................................................... 1

*Du Pont v. Prudential Ins. Co.*,
  No. CV 18-9638-DMG (ASx), 2019 U.S. Dist. LEXIS 167655
  (C.D. Cal. May 29, 2019) ........................................................................ 1, 8

*Dynatrace LLC v. Ramey*,
  No. 16-cv-01777-EMC, 2016 U.S. Dist. LEXIS 170205
  (N.D. Cal. Dec. 8, 2016) ......................................................................... 5, 10

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
  926 F.3d 539 (9th Cir. 2019) ...................................................................... 24

*Ferriss*, 2016 U.S. Dist. LEXIS 168576 ................................................................. 10

*Forcellati v. Hyland's, Inc.*,
  No. CV 12-1983-GHK (MRWx), 2014 U.S. Dist. LEXIS 50600
  (C.D. Cal. Apr. 9, 2014) ............................................................................. 24

*Gillibeau v. Richmond*,
  417 F.2d 426 (9th Cir. 1969) ...................................................................... 13

*Goldman v. Seawind Grp. Holdings Pty Ltd.*,
  No. CV 13-01759 SI, 2013 U.S. Dist. LEXIS 124052 (N.D. Cal. Aug. 29, 2013).....4, 5

*Goldschmied v. Brifil*,
  No. CV 18-7092 PSG (SKx), 2018 U.S. Dist. LEXIS 223988
  (C.D. Cal. Oct. 17, 2018) .......................................................................... 3, 6

*Gomez v. Campbell-Ewald Co.*,
  No. CV 10-2007 DMG (AJWx), 2016 U.S. Dist. LEXIS 109248
  (C.D. Cal. June 3, 2016) ............................................................................ 19

*Gonzales v. CarMax Auto Superstores, Ltd. Liab. Co.*,
  845 F.3d 916 (9th Cir. 2017) ................................................................... 6, 21

*Groupion, LLC v. Groupon, Inc.*,
  859 F. Supp. 2d 1067 (N.D. Cal. 2012) .................................................... 19

*GT Sec., Inc. v. Klastech GmbH*,
  No. C-13-03090 JCS, 2014 U.S. Dist. LEXIS 88237 (N.D. Cal. June 27, 2014)..........6

*Gucci Am., Inc. v. Huoqing*,
  No. C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783 (N.D. Cal. Jan. 3, 2011)...............11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................................ 1

*Hearns v. San Bernardino Police Dep't*,
   530 F.3d 1124 (9th Cir. 2008) ........................................................................ 12, 13

*Helm v. Alderwoods Grp., Inc.*,
   696 F. Supp. 2d 1057 (N.D. Cal. 2009) ................................................................ 1

*Herron v. Best Buy Stores, Ltd. P'ship*,
   No. 12-cv-02103-GEB-JFM, 2013 U.S. Dist. LEXIS 116625
   (E.D. Cal. Aug. 15, 2013) ...................................................................................... 20

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450, 462 (9th Cir. 2007) ........................................................................ 11

*In re Big Heart Pet Brands Litig.*,
   No. 18-cv-00861-JSW, 2019 U.S. Dist. LEXIS 229340 (N.D. Cal. Oct. 4, 2019) ....... 19

*In re Chocolate Confectionary Antitrust Litig.*,
   674 F. Supp. 2d 580 n.25 (M.D. Pa. 2009) ........................................................... 4

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................................. 25

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
   No. ML 12-2317 CAS (JEMx), 2012 U.S. Dist. LEXIS 172869
   (C.D. Cal. Dec. 3, 2012) ....................................................................................... 14

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ...................................................................... 23

*In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*,
   No. SAML 17-02797 AG (KESx), 2018 U.S. Dist. LEXIS 230306
   (C.D. Cal. Dec. 14, 2018) ..................................................................................... 23

*j2 Cloud Servs. v. Fax87*,
   No. 13-05353 DDP (AJWx), 2017 U.S. Dist. LEXIS 64064
   (C.D. Cal. Apr. 27, 2017) ....................................................................................... 7

*j2 Glob. Communs., Inc. v. Blue Jay, Inc.*,
   No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009) ................ 9

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .............................................................................. 23

*Kagan v. Gibraltar Sav. & Loan Ass'n*,
   35 Cal. 3d 582, 200 Cal. Rptr. 38, 676 P.2d 1060 (1984) ................................... 21

*Kissel v. Code 42 Software, Inc.*,
   No. SACV 15-1936-JLS (KESx), 2016 U.S. Dist. LEXIS 184368
   (C.D. Cal. Apr. 14, 2016) ................................................................................. 23

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012) ......................................................................................... 18

*Kulesa v. PC Cleaner, Inc.*,
   No. SACV 12-725 JVS (ANx), 2013 U.S. Dist. LEXIS 197705
   (C.D. Cal. Jan. 7, 2013) ................................................................................... 15

*Leek v. Cooper*,
   194 Cal. App. 4th 399 (2011) ........................................................................... 4

*Lopez v. Stages of Beauty, LLC*,
   307 F. Supp. 3d 1058 (S.D. Cal. 2018) .......................................................... 23

*Luman v. NAC Mktg. Co., LLC*,
   No. 2:13-cv-00656-KJM-AC, 2017 U.S. Dist. LEXIS 125498
   (E.D. Cal. Aug. 8, 2017) ................................................................................. 19

*Makaeff v. Trump Univ., Ltd. Liab. Co.*,
   145 F. Supp. 3d 962 (S.D. Cal. 2015) ............................................................ 20

*Manzo v. Energizer Holdings, Inc.*,
   No. CV 19-2844-DMG (ASx), 2019 U.S. Dist. LEXIS 227217
   (C.D. Cal. Aug. 28, 2019) ................................................................................. 7

*Matrix (U.S.) v. Trainor*,
   92 Civ. 5377 (JFK), 1994 U.S. Dist. LEXIS 9378 (S.D.N.Y. July 12, 1994) ............... 13

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ..................................................................... 24, 25

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174, 105 Cal. Rptr. 3d 704 (2010) ................................... 20

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ................................................................... 23, 25

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634, 88 Cal. Rptr. 3d 859, 200 P.3d 295 (2009) ........................ 21

*Millennium Dental Techs. v. Terry*,
   No. SA CV 18-0348-DOC (KESx), 2018 U.S. Dist. LEXIS 238436
   (C.D. Cal. July 16, 2018) ................................................................................ 17

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989) .......................................................................... 15

*Noll v. eBay, Inc.*,
   No. 5:11-CV-04585-EJD, 2013 U.S. Dist. LEXIS 76323
   (N.D. Cal. May 30, 2013) ........................................................................... 23

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ...................................................................... 22

*Pax Water Techs., Inc. v. Medora Corp.*,
   No. LA CV18-09143 JAK (AGRx), 2019 U.S. Dist. LEXIS 163183
   (C.D. Cal. Aug. 5, 2019) ............................................................................. 17

*Perez v. DirecTV Grp. Holdings, LLC*,
   No. 8:16-cv-01440-JLS-DFM, 2019 U.S. Dist. LEXIS 209405
   (C.D. Cal. July 23, 2019) ............................................................................ 22

*Piping Rock Partners, Inc. v. David Lerner Assocs.*,
   No. C 12-04634 SI, 2012 U.S. Dist. LEXIS 161643 (N.D. Cal. Nov. 9, 2012).......... 1, 7

*Polo v. Innoventions Int'l, Ltd. Liab. Co.*,
   833 F.3d 1193 (9th Cir. 2016) ..................................................................... 21

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ...................................................................... 4

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ........................................................ 14

*River City Mkts., Inc. v. Fleming Foods W., Inc.*,
   960 F.2d 1458 (9th Cir. 1992) ..................................................................... 22

*Roberts v. Obelisk, Inc.*,
   No. 18cv2898-LAB (BGS), 2019 U.S. Dist. LEXIS 72065
   (S.D. Cal. Apr. 29, 2019) .............................................................................. 3

*Robinson v. Unilever United States*,
   No. CV 17-3010-DMG (AJWx), 2018 U.S. Dist. LEXIS 225254
   (C.D. Cal. June 25, 2018) ........................................................................... 25

*Ronches v. Dickerson Emple. Benefits, Inc.*,
   No. CV 09-04279 MMM (PJWx), 2009 U.S. Dist. LEXIS 139975
   (C.D. Cal. Oct. 30, 2009) ...................................................................... 16, 18

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ...................................................................... 23

*Schlesinger v. Collins*,
   No. 19-cv-03483-EMC, 2019 U.S. Dist. LEXIS 167193
   (N.D. Cal. Sep. 25, 2019)......................................................................... 7, 10

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ................................................................ 1, 6

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) ................................................................ 21

*Shin v. Campbell Soup Co.*,
No. CV 17-1082-DMG (JCx), 2018 U.S. Dist. LEXIS 228058
(C.D. Cal. June 11, 2018) ...................................................................... 25

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ................................................................ 11

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................................... 9

*Sprewell v. Golden State Warriors*,
Nos. 99-15602, 99-17186, 2001 U.S. App. LEXIS 20434 (9th Cir. Dec. 28, 2001) .... 25

*Straumann USA, LLC v. TruAbutment Inc.*,
No. 8:19-cv-00878-JLS-DFM, 2019 U.S. Dist. LEXIS 219521
(C.D. Cal. Oct. 1, 2019) ........................................................................ 14

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ................................................................ 18

*T. K. v. Adobe Sys.*,
No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 65557 (N.D. Cal. Apr. 17, 2018) .... 19

*Transfresh Corp. v. Ganzerla & Assoc.*,
862 F. Supp. 2d 1009 (N.D. Cal. 2012) .................................................... 16

*Underwood v. Future Income Payments, LLC*,
No. SA CV 17-1570-DOC (DFMx), 2018 U.S. Dist. LEXIS 233539
(C.D. Cal. Apr. 26, 2018) ................................................................ 17, 18

*United States ex rel. Silingo v. Wellpoint, Inc.*,
904 F.3d 667 (9th Cir. 2018) ................................................................ 17

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016). .............................................................. 17

*United States v. Wilde*,
74 F. Supp. 3d 1092 (N.D. Cal. 2014) ...................................................... 24

*W. Dental Servs. v. Media Direct Inc.*,
No. SA CV 19-0318-DOC (JDEx), 2019 U.S. Dist. LEXIS 221926
(C.D. Cal. July 19, 2019) ...................................................................... 17

*Wang v. Massey Chevrolet*,
97 Cal. App. 4th 856, 118 Cal. Rptr. 2d 770 (2002) .................................... 20

*Webster v. HSBC Bank United States Nat'l Ass'n*,
No. CV 11-10798 DMG (AGRx), 2012 U.S. Dist. LEXIS 199967
(C.D. Cal. Mar. 5, 2012) ............................................................................. 17

*Wu v. Or. Trail Corp.*,
No. CV 19-4162 PSG (JPRx), 2019 U.S. Dist. LEXIS 211132
(C.D. Cal. July 31, 2019) ............................................................................ 25

*Yucesoy v. Uber Techs., Inc.*,
No. 15-cv-00262-EMC, 2016 U.S. Dist. LEXIS 15867 (N.D. Cal. Feb. 9, 2016) ........ 15

**Statutes**

Cal. Bus. & Prof. Code § 17600 ...................................................................... 11

Cal. Civ. Code §1782(b) ................................................................................ 21

Cal. Civ. Code §1782(c) ................................................................................ 21

**Rules**

Fed. R. Civ. P. 94(k)(2) ................................................................................. 11

Fed. R. Civ. P. 8(a) ....................................................................................... 12

Fed. R. Civ. P. 9(b) ....................................................................................... 15

## I.   INTRODUCTION

Defendants' instant motion (dkt. 68) contains a significant amount of overlap with prior motions. For ease of reading, Plaintiff notes that the personal jurisdiction sections in this brief contain significantly different facts and argument specific to Mr. Saha, and to a lesser extent the 9(b) sections and the section on the CLRA transaction issue and RICO issues. The remaining sections are largely identical to the prior responses.

## II.   ARGUMENT

### A. Personal Jurisdiction is Appropriate as to Kinkar Saha

In deciding a personal jurisdiction motion, "A district court may consider evidence outside of the pleadings, including affidavits submitted by the parties, and may order discovery on jurisdictional issues." *Du Pont v. Prudential Ins. Co.*, No. CV 18-9638-DMG (ASx), 2019 U.S. Dist. LEXIS 167655 at *7 (C.D. Cal. May 29, 2019) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (courts consider both the complaint and "affidavits plus discovery materials."). Defendants seek dismissal without jurisdictional discovery and without an evidentiary hearing: "[i]f a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff 'need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1066 (N.D. Cal. 2009) (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "Unless directly contravened, the plaintiff's version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor...." *Id.* (emphasis added); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) ("uncontroverted allegations in the complaint must be taken as true"). Conclusory denials in an affidavit from Defendants do not suffice to controvert a complaint's allegations. *Piping Rock Partners, Inc. v. David Lerner Assocs.*, No. C 12-04634 SI, 2012 U.S. Dist. LEXIS 161643 at *23-25 (N.D. Cal. Nov. 9, 2012). Instead, a Defendants' affidavits must be "supported by contravening evidence or factual assertions"

to defeat personal jurisdiction. *Id.*

### 1. Kinkar Saha's Role

The CodeClouds Defendants present themselves as a single, unified company—indeed, they operate from single website which lists Saha as the founder and CEO of all of the entities: "As founder and CEO, **Kinkar manages all aspects of CodeClouds' international business operations.**" Ex. 1 (emphasis added). He was further a CEO of an Indiana corporation called CodeClouds LLC, meaning he had managerial involvement in the U.S. operations as well. Dkt. 21 at ¶ 78, 351. Saha co-founded Defendant Long Tail with Brian Hill. *Id.* at ¶ 348. Saha was specifically involved in a prior FTC action in which a court-appointed receiver demanded that CodeClouds produce documents about its involvement in an identical free trial scam based out of California. *Id.* at ¶ 335; Ex. 2 at 8. Saha refused to produce documents to the receiver regarding the California scammer there, claiming they were all in possession of the CodeClouds New Zealand entity he was the CEO of. Ex. 2 at 8. Saha is alleged to have been "responsible for negotiating the partnerships listed on the CodeClouds website, which both would have given them knowledge of the scam infested nature of the 'nutra vertical' and which were designed specifically to assist clients of CodeClouds in running scams by partnering them with companies whose sole activity was enabling those scams." Dkt. 21 at ¶ 352. Saha is alleged to have been "involved in the technical development of the CodeClouds Unify products, and this process involved soliciting feedback from scammers about their software needs. It further involved selecting integration partners whose products were designed to help scammers commit bank fraud (such as load balancers), as well as designing features of the CodeClouds software to help scammers commit bank fraud (such as the ability to create and manage large volumes of "compliant" pages to gain access to merchant accounts or the BIN Mangement feature)." *Id.* at ¶ 353. He is alleged to have "attended the ADSUM Conference, an affiliate marketing conference at which, on information and belief, they targeted scammers such as the Wyer Defendants as customers." *Id.* at ¶ 354. He is alleged to be "specifically aware of what a load balancer is and how it is used to commit fraud with respect to Merchant ID's, as he

was sent an e-mail regarding load balancing functionality he had created for a customer which was filed in a lawsuit in Federal court." *Id.* at ¶ 356; Ex. 3. Along with the other CodeClouds Defendants he is alleged to have assisted the Wyer Defendants in their scam by "creating and operating software for the Wyer Defendants that managed the shipping of products to California residents and the accepting and processing returns and complaints from California residents," to have "consulted for the Wyer Defendants on sales that they knew would be made to California residents," to have provided these services to the Wyers while they were California residents, and to have "created numerous 'false fronts' purporting to be run by companies located in California for the express purpose of submitting them to financial institutions to defraud them." Dkt. 21 at ¶ 358.

Further, Saha "manages all of CodeClouds' international business operations," Ex. 1. This managerial role means that these contacts of the other CodeClouds entities are appropriately considered as to Saha personally. If officers are "guiding spirits," "central figures," or "primary participants" in alleged corporate conduct by others, it can be considered as to personal jurisdiction as to them individually. *Goldschmied v. Brifil*, No. CV 18-7092 PSG (SKx), 2018 U.S. Dist. LEXIS 223988 at *12-13 (C.D. Cal. Oct. 17, 2018). Officers have been subjected to personal jurisdiction individually for their involvement in marketing through a corporate website. *Roberts v. Obelisk, Inc.*, No. 18cv2898-LAB (BGS), 2019 U.S. Dist. LEXIS 72065 at *11-14 (S.D. Cal. Apr. 29, 2019).

Those international operations controlled by Saha include a "world-class development team in India," which logged into the Wyer's Cloudflare account repeatedly to create and manage websites for the scam and to destroy evidence in response to this lawsuit. Ex. 4; dkt. 21 at ¶ 200, 203, 215, 345. Saha has acknowledged in his declaration that he was "involved" in the negotiation of an agreement between CodeClouds New Zealand and Defendant Island LLC (a company owned by Ralph Wyer, dkt. 21 at ¶ 15). *See* Dkt. 68-2 at ¶ 10-11. Saha denies that CodeClouds was involved in any way in the scam, instead putting the blame on an unidentified "third-party developer." *Id.* at ¶ 11. He does not explain why the CodeClouds website contains numerous products at issue here in its

portfolio, dkt. 21 at ¶ 302-314. He does not explain why the Wyers were using CodeClouds' CMS software on their websites. *Id.* at ¶ 315-326. He does not explain why he personally was identified as being involved in a near-identical scam previously. *Id.* at ¶ 335-336. The minimalist declaration Saha provides speaks volumes by its silence on the details. Because Saha managed the Indian development team, he directly participated in these activities and they are relevant to personal jurisdiction.

## 2. The CodeClouds Defendants are Alter Egos of One Another

The Court should not evaluate the CodeClouds Defendants one-by-one but as a consolidated entity because they are alter egos. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1072 (9th Cir. 2015) ("When two organizations assume alter ego status, they effectively operate as a single, unified entity notwithstanding the superficial corporate boundaries between them. The consolidated entity is subject to jurisdiction in any forum where it operates regardless of which formal corporation maintains an in-forum presence.") (quoting *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 599 n.25 (M.D. Pa. 2009)). "If a corporation is the alter ego of an individual defendant, or one corporation is the alter ego of another, a court may 'pierce the corporate veil' and attribute the 'contacts' of the corporation to the individual." *Goldman v. Seawind Grp. Holdings Pty Ltd.*, No. CV 13-01759 SI, 2013 U.S. Dist. LEXIS 124052 at *8-9 (N.D. Cal. Aug. 29, 2013).

> To make a prima facie showing that Ward is an alter ego of the companies, plaintiffs must show: "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." When courts consider the alter ego doctrine they look to numerous factors, including inadequate capitalization, commingling of funds and other assets, the holding out by one entity that it is liable for the debts of the other, identical equitable ownerships, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Id.* at *9-10 (citations omitted). "To recover on an alter ego theory, a plaintiff need not use the words 'alter ego,' but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor." *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011).

Here, the various CodeClouds entities present themselves publicly as a single unit. Dkt. 21 at ¶ 347-350. All of the entities share a single website, codeclouds.com. Ex. 5. They share the same customers, with Long Tail employees managing U.S. accounts and other CodeClouds entities performing work at their direction. They sell the same software (El Minara), dkt. 21 at ¶ 323-330, tout themselves as a single entity, and describe each of the companies as "offices" or "divisions" of CodeClouds as an entity. Ex. 6. They share the same leadership team. Ex. 5. And likely far more would be uncovered in jurisdictional discovery, *see infra*.

As for prong two of the alter ego analysis, "that failure to disregard their separate identities would result in fraud or injustice," this is easily met: the SAC alleges throughout that the entire purpose of this corporate structure was to facilitate the fraud. Now Defendants seek to inflict an injustice, dodging liability through that structure. The Court should impute the contacts of the CodeClouds Defendants to one another and consider them as a consolidated unit. *Goldman*, 2013 U.S. Dist. LEXIS 124052 at *11.

### 3. Kinkar Saha is Subject to Specific Jurisdiction

The 9th Circuit test is: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dynatrace LLC v. Ramey*, No. 16-cv-01777-EMC, 2016 U.S. Dist. LEXIS 170205 at *3-4 (N.D. Cal. Dec. 8, 2016). "The plaintiff must prove the first two prongs, at which point, 'the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.'" *Id.* (citation omitted).

### a) Kinkar Saha Satisfies the Purposeful Direction Test

In tort cases, the purposeful direction analysis requires that a defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). "The first prong of purposeful direction is easily satisfied and generally glossed over by the courts." *GT Sec., Inc. v. Klastech GmbH*, No. C-13-03090 JCS, 2014 U.S. Dist. LEXIS 88237 at *41-42 (N.D. Cal. June 27, 2014). This requires "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Saha satisfies this test: the evidence discussed *supra* shows that he was responsible for managing the Indian CodeClouds employees who set up the websites at issue, including "false fronts" which were created for the various Wyer Defendants, many of which indisputably are based in California. *See* Plaintiff's Response to Dkt. 47; dkt. 21 at ¶ 225, 346. While Saha denies this, he suggests only that an unknown "third-party developer" was responsible. This does not contravene Plaintiff's version of the facts: the "third party" he refuses to identify could well be one of the other CodeClouds entities, because Saha/Hill repeatedly insist that each is a separate entity. Saha further does not deny the Complaint's detailed allegations of his knowledge of the scam (based in part on being threatened with contempt in a prior FTC action). Even if a third party programmed the actual "bank pages," to the extent Saha knowingly procured the services of that third-party developer to create fake "bank pages" for a California-based Internet scam for the purpose of defrauding California consumers and their California banking institutions, his conduct was still directed at California and it is still considered on a personal jurisdiction motion as he is a "guiding spirit" or "central figure" in the conduct. *Goldschmied*, 2018 U.S. Dist. LEXIS 223988 at *12-13.

The second prong and third prong are likewise easily met. It is decisive on the second and third prongs that the fraud involved signing Plaintiff and many other California residents up for an ongoing subscription and shipping unordered products to them **after** Defendants obtained their California addresses and billing information for California accounts. "The problem for Mr. Collins is that, even if he did not act in a 'premeditated' fashion — i.e., plan in advance to target California — he (or someone acting on his behalf)

ultimately did target California, and with sufficient knowledge of such based on the California area code for Mr. Schlesinger's phone number. Under these circumstances, the second and third elements of the Calder effects test have been sufficiently satisfied." *Schlesinger v. Collins*, No. 19-cv-03483-EMC, 2019 U.S. Dist. LEXIS 167193 at *6-8 (N.D. Cal. Sep. 25, 2019); *Manzo v. Energizer Holdings, Inc.*, No. CV 19-2844-DMG (ASx), 2019 U.S. Dist. LEXIS 227217 at *11 (C.D. Cal. Aug. 28, 2019) (holding that express aiming element was met where "Defendants do not contest the FAC's assertion that the marketing concerning the liquid-based air fresheners targets California consumers").

The website on which Cummings and other Californians signed up for a free sample—tryimmortelleyouth.com—is interactive because it requires consumers to enter personal and financial information. Ex. 7. Interactive websites permit exercise of personal jurisdiction where they allow an exchange of information and purchase of products. *j2 Cloud Servs. v. Fax87*, No. 13-05353 DDP (AJWx), 2017 U.S. Dist. LEXIS 64064 at *20 (C.D. Cal. Apr. 27, 2017). And ongoing subscription billing of known Californians is "something more" that would make even a passive website suffice. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). Saha denies (in conclusory fashion) that he was involved. He does not provide the Court with the contract he negotiated with Island LLC, or with any of his communications with the Wyers (who ran Island LLC), or indeed with any documents or facts at all that would substantiate or even explain his denials. He simply repeats Plaintiff's allegations and denies them in conclusory fashion— which, on a personal jurisdiction motion, means that the Plaintiffs' version of the facts must still be assumed to be true. *Piping Rock,* 2012 U.S. Dist. LEXIS 161643 at *23-25. And the Complaint alleges that Saha (and CodeClouds' Indian developers, who he manages) were in fact involved in creating and operating these sites for the Wyers.

Saha and CodeClouds are alleged to have created (or supervised the creation) of these "false fronts" at Ralph/Joseph Wyer's direction, knowing the Wyers planned to send them to banks in California while falsely claiming that those Californians bought from the websites. "Communications with an individual located in California are activities 'directed'

at California." *Du Pont v. Prudential Ins. Co.*, No. CV 18-9638-DMG (ASx), 2019 U.S. Dist. LEXIS 167655 at *18 (C.D. Cal. May 29, 2019). Indeed, Saha has specifically performed this same role in another California-based free trial scam, the *Apex* case (also in this District). Dkt. 21 at ¶ 335, 355. This shows that Saha/CodeClouds were targeting not just victims here, but targeting the state of California to recruit free trial scammers as customers.

Saha claims he had no direct contact with Plaintiff. But the Complaint alleges otherwise—specifically, it alleges the El Minara/Unify software CodeClouds implemented provided "load balancing" functionality and that they committed "[b]ank fraud and wire fraud through the use of CodeClouds software to conduct 'load balancing' by distributing chargebacks across merchant accounts so that they would not be flagged for fraud." Dkt. 21 at ¶ 535; *see also* ¶ 316-317, 353, 356, 458. A "load balancer" is software used as part of free trial scams which, when a customer purchases the product, takes their credit card information and automatically selects which of a large number of merchant accounts to bill it to. The software monitors the number of chargebacks on each merchant account, and disguises the fraud by distributing the chargebacks evenly across those accounts. Importantly, this means that CodeClouds—as the ones managing and operating this load balancing software on behalf of the Wyers—**<u>directly obtained the credit card information for Mrs. Cummings and the Class</u>** when they inputted it on the websites, then made the selection of which merchant account to bill from, then transmitted the customer's billing information to the financial institution using that merchant account. This is not mere speculation—in an e-mail chain filed in another lawsuit titled "URGENT – MIDS GETTING DISABLED IN LOAD BALANCER" (dkt. 21 at ¶ 356), CodeClouds was specifically providing a load balancer to another scammer and controlling its operation and the user traffic to it. Ex. 3. The chain references worries about "MIDs"—merchant IDs, aka merchant accounts—being disabled through too many declines. *Id.*

Saha states that "Neither the CodeClouds Entities nor I provided any load balancing

software or obtained credit card information from any of the websites at issue in this lawsuit." Dkt. 68-1 at ¶ 17. **But this is a non-denial: in the prior lawsuit CodeClouds was involved in, the load balancer was third-party software and CodeClouds installed it, integrated it with the scammer's website and El Minara, and operated it.** The load balancer in the prior lawsuit was a third-party product called Konnektive. Ex. 3. Konnektive (and several other similar companies) are listed as "partners" of CodeClouds on its website, and CodeClouds claims that by hiring them, clients can "gain access" to these partners. Ex. 8; *see also* Dkt. 21 at ¶ 342-344 (explaining CodeClouds partners are integral to the scam).

Because they operated this load balancer—and thus obtained Class member's credit card information and transmitted it to banks using software designed to hide the fraud—Saha/CodeClouds's conduct is far different from the cases Defendants cite in which a company developed software for others, but had no interactions with customers themselves. Dkt. 68 at 8-9. In those cases, the Defendants "play[ed] no part in the exchange of data between Facebook and Plaintiffs." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017). Here, CodeClouds directly conducted this data exchange—and Saha managed the international employees who performed that process, and transmitted data from customers to banks. Saha's personal actions are considered for personal jurisdiction if tortious, even if done for a company. *j2 Glob. Communs.,* 2009 U.S. Dist. LEXIS 1616 at *15. The *AMA Multimedia* case is similarly inapposite. *See AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). There, the 9th Circuit considered a pornography website in Poland and distinguished it from prior decisions establishing personal jurisdiction over websites that knew their customers resided in California and knowingly exploited the California market for gain. *Id.* at *17-18. The pornography website in *AMA Multimedia* structured its activities so that every user saw advertisements based on their locality. *Id.* Saha, by contrast, contracted with a group of California-based scammers, managed the creation of fake websites for shell companies located in California knowing they would be sent to California banks to deny chargebacks to California customers, and operated a "load balancer" that took credit card data from known California citizens and

selected which of the merchant accounts of those California-based shell companies nominally run by California citizens to assign to the charges to in order to prevent the accounts from being flagged for fraud. This is exactly the kind of forum-targeted conduct (not just targeting the Plaintiff alone) which establishes conduct aimed at California.

### b) All Defendants satisfy the Relation to Forum test.

"For the second prong, the Ninth Circuit relies on a "'but for' test to determine whether a particular claim arises out of forum-related activities." *Dynatrace*, 2016 U.S. Dist. LEXIS 170205 at *10. "This test asks whether the cause of action would not have arisen, but for the contacts between the defendant and the forum state." *Ferriss v. All. Publ'g, Inc.*, No. 15-cv-05675-EMC, 2016 U.S. Dist. LEXIS 168576 at *15-16 (N.D. Cal. Dec. 6, 2016). Had Saha not provided services to Island LLC, created the websites, or operated the load balancer, Plaintiff and the Class would not have been defrauded. Had the load balancer not been used to mask the fraud, it would have been detected and banks would have returned her money, or the subscription payments would never have been processed. The same is true of the Class as a whole. Had the chargebacks been distributed naturally instead of through a load balancer designed to hide fraud, no one in the Class could have been injured at all because the scam as a whole would have been shut down long ago.

### c) The exercise of jurisdiction over all Defendants is reasonable.

A Defendant "shoulders the burden of proving that the exercise of jurisdiction would be unreasonable, and, under Ninth Circuit law, must 'present a compelling case' of unreasonableness." *Schlesinger*, 2019 U.S. Dist. LEXIS 167193 at *9. Defendants have not even attempted this analysis here. The Court considers:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dynatrace*, 2016 U.S. Dist. LEXIS 170205 at *10-11. As to these factors: (1) Defendants purposely injected themselves into California's affairs by defrauding customers and

financial institutions here. (2) The burden of litigating here from other states is increasingly minimized with technological advances. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011). And it must be so burdensome that Defendants are deprived of due process. *Gucci Am., Inc. v. Huoqing*, No. C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783 at *26 (N.D. Cal. Jan. 3, 2011). And the "corresponding burden on the plaintiff" of litigating in New Zealand would be just as great, rendering this factor neutral. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). (3) Defendants make no argument that there is any conflict of sovereignty. (4) California has a strong interest in adjudicating the dispute and the Legislature has specifically asserted a public policy of stopping this kind of scam. Cal. Bus. & Prof. Code § 17600. (5) The efficient judicial resolution factor is no longer weighted heavily due to modern technology. *Gucci*, 2011 U.S. Dist. LEXIS 783 at *26. (6) and (7) There is no alternative forum identified.

### 4.  Jurisdiction Is Proper Under FRCP 4(k)(2)

Saha is a foreign defendant, dkt. 21 at ¶ 78, and as such is subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2) because the RICO claim "arises under federal law." A summons was served on Saha. Dkt. 52. That summons thus establishes personal jurisdiction if (a) he is "not subject to jurisdiction in any state's courts of general jurisdiction," and (b) "exercising jurisdiction is consistent with the United States Constitution and laws." F. R. Civ. P. 4(k)(2). The analysis under 4(k)(2) is "nearly identical" to the traditional analysis, except his contacts are evaluated with the U.S. as a whole. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). Mr. Saha has not alleged that he is subject to the general jurisdiction of any state. *Id.* at 462. If the Court concludes Saha did not have sufficient contacts with California, he certainly did as to the U.S. as a whole. The Immortelle scam was nationwide, and Saha founded, partnered with and helped control Long Tail (a U.S. company) to defraud U.S. consumers by assisting a U.S.-based group of scammers (the Wyer Defendants).

### 5.  Jurisdictional Discovery is Proper If the Court Finds No Prima Facie Case

Plaintiff believes that the motion to dismiss can be denied on the papers—Defendants' declarations are barebones and not the specific factual assertions or evidence required to contravene the SAC, so it must be taken as true. If the Court disagrees, jurisdictional discovery is appropriate because Plaintiff has provided at least a "colorable basis" or "some evidence" for jurisdiction. *Dickert v. Sanyo Energy (U.S.A.) Corp.*, No. 18-cv-04664-EMC, 2019 U.S. Dist. LEXIS 39871 at *2-3 (N.D. Cal. Mar. 12, 2019). Given the ties to California here, Plaintiff would uncover more evidence of ties to this state in sales data, documents about Saha / the Code Clouds Defendants' roles, the CodeClouds corporate relationships and alter ego issues, communications with the Wyer Defendants and their companies, work orders, contracts, invoices, internal documents about the Island LLC account, an inspection of the software for the scam websites, and depositions.

## B. The SAC Does Not Violate Rule 8(a)

Defendants argue that the SAC should be dismissed under FRCP 8(a). But the Ninth Circuit has decided in a case that post-dates all authority cited by Defendants that the length of a complaint alone cannot justify dismissal under 8(a): "*Agnew* has never been cited by this court as standing for the proposition that a complaint may be found to be in violation of Rule 8(a) solely based on excessive length, nor does any other Ninth Circuit case contain such a holding. Decisions from other circuits are also consistent with the view that verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008). The question under 8(a) is not whether a complaint is long—it is whether it is understandable, or whether it is confusing and conclusory. *Id.* at 1132. Complaints with a logical structure and organization do not violate 8(a), even if lengthy: "The complaint is logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor." *Id.* Even if a complaint is found to have "set out more factual detail than necessary," it does not violate 8(a) where those factual details are "relevant to Plaintiff's causes of action...." *Id.* Dismissal under 8(a) "is usually confined to instances in which the complaint is so

'verbose, confused and redundant that its true substance, if any, is well disguised.'" *Gillibeau v. Richmond*, 417 F.2d 426, 431 (9th Cir. 1969) (quoting *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965)). And dismissal with prejudice—which Defendants seek here—is an abuse of discretion if the court does not first consider "less drastic alternatives," such as leave to amend. *Hearns*, 530 F.3d at 1132.

While the SAC is lengthy, it is not unorganized, conclusory, or difficult to understand. It follows a logical organizational structure: a background explanation of the scam and the roles of the remaining John Doe(s), dkt. 21 at 16-23 ¶ 81-99; the factual background of Mrs. Cummings' purchase, *id.* at 23-25 ¶ 100-105; a walk-through of the sales funnel at issue and the false statements that were made to the Class members, *id.* at 25-41 ¶ 106-165; detailed and individualized allegations regarding each group of Defendants, *id.* at 41-107 ¶ 166-382; class allegations, *id.* at 108-115 ¶ 383-396; and enumerated legal claims, *id.* at 116-155 ¶ 397-592. There are good reasons for the length. All of the fraud claims must be pled with particularity. And much of the length is attributable to the number of shell companies (and number of products and websites). 11 pages were simply listing the companies at issue. Dkt. 21 at 5-16. Another 5 pages explain the corporate structure. *Id.* at 41-46. Another 13 pages were required to simply list the websites and products at issue. *Id.* at 73-80; 107-111. Finally, the fact that the Wyer Defendants forged records in response to the third-party subpoenas in this case (and attempted to frame others for their own conduct) necessitated a careful analysis of why each Defendant was believed to be responsible. Dkt. 21 at 46-49 ¶ 189-202.

The complex nature of Defendants' scam—and the number of companies involved— is itself a reason not to find an 8(a) violation. *See Matrix (U.S.) v. Trainor*, 92 Civ. 5377 (JFK), 1994 U.S. Dist. LEXIS 9378 at *13-14 (S.D.N.Y. July 12, 1994) ("plaintiffs should not be penalized for filing a lengthy complaint" where they pled a RICO conspiracy that "involved 21 defendants and conducted several fraudulent transactions"). The scam at issue (and its complex ecosystem involving multiple actors) has been well documented by the

BBB. Dkt. 21, Ex. 1, federal prosecutors,[1] and the FTC. Dkt. 21 at 55-56 ¶ 223-226. Defendants' protestations that they cannot understand the allegations in the SAC ring hollow given that they operated a cookie-cutter free trial scam.

### C. The SAC was pled with particularity under Rule 9(b).

After arguing that the SAC is too long, Defendants argue it is too short. But the touchstone of 9(b) is whether the SAC is "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). The SAC satisfies this purpose.

Defendants argue that Plaintiff has not pled what the "Sales Website" was. Dkt. 68 at 15. But the SAC specifically identifies this website: tryimmortelleyouth.com. Dkt. 21 at 24-25 ¶ 104 ("**That website [immortelleyouth.com], however, was not the website on which Mrs. Cummings signed up for a free trial** of the Immortelle Youth skin product. Instead, in a move typical of this kind of scam, Defendants were operating two separate websites—one, immortelleyouth.com, which was presented as their website to anyone who began asking questions. **Another, tryimmortelleyouth.com, is the website on which consumers actually sign up for a free trial.**) (emphasis added); *id.* at ¶ 147, 160, 220.

9(b) is satisfied by providing "examples of the alleged advertisements of false statements." *Straumann USA, LLC v. TruAbutment Inc.*, No. 8:19-cv-00878-JLS-DFM, 2019 U.S. Dist. LEXIS 219521 at *11-13 (C.D. Cal. Oct. 1, 2019); *see also In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, No. ML 12-2317 CAS (JEMx), 2012 U.S. Dist. LEXIS 172869 at *41-43 (C.D. Cal. Dec. 3, 2012) ("It suffices for plaintiffs to provide examples of advertisements similar to those they saw as long as all the advertisements convey the core allegedly fraudulent message."); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1044-45 (N.D. Cal. 2014). And courts have rejected arguments "that

---

[1] *Texas Man Indicted In Puerto Rico For Wire And Bank Fraud Scheme*, available at https://www.justice.gov/usao-pr/pr/texas-man-indicted-puerto-rico-wire-and-bank-fraud-scheme (last visited July 16, 2020).

Plaintiffs should be required to plead the specific webpage," instead holding "an allegation that the specific misleading statement was on the defendant's website was sufficient to satisfy Rule 9(b)." *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-00262-EMC, 2016 U.S. Dist. LEXIS 15867 at *7-9 (N.D. Cal. Feb. 9, 2016).

Here, the SAC alleges Defendants operated a website that was intentionally made inaccessible to hide the fraud. Dkt. 21 at 25 ¶ 108; 40 ¶ 160 ("the tryimmortelleyouth.com website was designed to be inaccessible from its main page"); ¶ 216. Plaintiff cited (1) Mrs. Cummings' recollections of the website and advertising she viewed, dkt. 21 at ¶ 100-101, 107; and (2) video of the websites which was uploaded by a victim to Youtube on February 20, 2019—just weeks before Plaintiff signed up, dkt. 21 at 25-32 ¶ 109-126. The SAC includes numerous screenshots from this video, identifies each misrepresentation on the websites, and alleges they are identical to what Plaintiff saw.

Defendants do not deny that tryimmortelleyouth.com was hosted (along with hundreds of other websites used to apply for merchant accounts) on a Cloudflare account created by Ralph Wyer. Dkt. 21 at 47-49 ¶ 194-202. They do not deny that the video is an accurate representation of the websites Mrs. Cummings viewed. *See Kulesa v. PC Cleaner, Inc.*, No. SACV 12-725 JVS (ANx), 2013 U.S. Dist. LEXIS 197705 at *8-10 (C.D. Cal. Jan. 7, 2013) (9(b) satisfied where plaintiff "provides images she claims are, or are substantially similar to, the advertisements she viewed"). A plaintiff cannot be expected to provide a copy of a website where defendants have it their possession and have intentionally made it publicly inaccessible. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (requirements under 9(b) "may be relaxed as to matters within the opposing party's knowledge"); *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("Even in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant."). As to the Facebook advertisement, Plaintiff has pled a detailed description of when she saw it and what misrepresentations it contained. Dkt. 21 at 23 ¶ 100. Those contents match the video that is excerpted in detail. The Facebook ad was deleted and is inaccessible—at least to Plaintiff. *Id.* Only Defendants would know who ran

it. It is also of note that 9(b) applies on a representation-by-representation basis. *See Transfresh Corp. v. Ganzerla & Assoc.*, 862 F. Supp. 2d 1009, 1018-21 (N.D. Cal. 2012). Defendants' 9(b) argument has nothing to say about Plaintiff's omissions claims or its "false front" claims that fake websites were presented to the victims' banks to prevent chargebacks. Dkt. 21 at 32-33 ¶ 127-130.

Defendants argue Plaintiff failed to identify which persons made the representations on behalf of the corporations or published the websites. This is false. The SAC alleges "Since January 2018, Defendants Ralph Wyer and Joseph Wyer have created and operated a vast number of websites relating to their free trial scams." Dkt. 21 at 41 ¶ 166. It alleges that they did so "[t]hrough a series of shell companies based primarily out of Wyoming and Delaware." *Id.* It alleges the nominal owners of these companies "were recruited as figureheads to avoid any detection of the Wyers' role in the fraud." *Id.* at 41-42 ¶ 167; *see also id.* at 43-44 ¶ 176-77 (alleging that the other Moving Defendants were "formed by the Wyers" and "controlled by the Wyers" who falsely listed the shell companies as owners of the websites on the Wyers' Cloudflare account); *id.* at 52 ¶ 215 (alleging Ralph Wyer created the Cloudflare account and immortelleyouth.com and tryimmortelleyouth.com were hosted there); *id.* at 59 ¶ 229 ("[T]he other shell companies operated by Ralph and Joseph Wyer were utilized in the same way: to bill customers for the scam products until their merchant accounts were flagged for fraud and cancelled.").

Tryimmortelleyouth.com (the sales page) is unavailable, and immortelleyouth.com (the false front) does not list an owner, meaning only Defendants know which of their shell companies pretended to own them. *Ronches v. Dickerson Emple. Benefits, Inc.*, No. CV 09-04279 MMM (PJWx), 2009 U.S. Dist. LEXIS 139975 at *74-75 (C.D. Cal. Oct. 30, 2009) ("Rule 9(b)'s particularity requirement is relaxed in instances of corporate fraud where the facts supporting the allegations of fraud lie exclusively within defendant's possession."). The SAC alleges that Ralph/Joseph Wyer owned and operated these websites. Dkt. 21 at 43-44 ¶ 176-77. And even as to legitimate organizations with no issue of fake owners, courts have rejected similar claims that the plaintiff had to identify which employee or agent

published the website. *Pax Water Techs., Inc. v. Medora Corp.*, No. LA CV18-09143 JAK (AGRx), 2019 U.S. Dist. LEXIS 163183 at *27-28 (C.D. Cal. Aug. 5, 2019) (information about "the particular employees" who operated website was "peculiarly within the opposing party's knowledge"); *W. Dental Servs. v. Media Direct Inc.*, No. SA CV 19-0318-DOC at *22-24 (JDEx), 2019 U.S. Dist. LEXIS 221926 (C.D. Cal. July 19, 2019) (identifying several employees involved without specifying their roles still satisfied 9(b)); *Millennium Dental Techs. v. Terry*, No. SA CV 18-0348-DOC (KESx), 2018 U.S. Dist. LEXIS 238436 at *24-26 (C.D. Cal. July 16, 2018) (9(b) satisfied because plaintiff "identifies specific false statements made by [defendant] on specific occasions, and has explained why those statements are fraudulent"). Here, Plaintiff did not speak to anyone—she interacted with an ad and a website. She cannot be expected to plead more about who was behind them. *Webster v. HSBC Bank United States Nat'l Ass'n*, No. CV 11-10798 DMG (AGRx), 2012 U.S. Dist. LEXIS 199967 at *11 (C.D. Cal. Mar. 5, 2012).

Finally, Defendants argue that Plaintiff has engaged in improper "lumping." But the 9th Circuit has specifically approved "lumping" where defendants are alleged to have committed the same wrongful acts. In *United States ex rel. Silingo v. Wellpoint, Inc.,* 904 F.3d 667 (9th Cir. 2018), the court held that "when defendants engage in different wrongful conduct, plaintiffs must likewise 'differentiate their allegations.'" *Id.* at 677. But where defendants are alleged to have had the same role in the fraud or to have committed the same wrongful acts, they may be grouped:

> On the other hand, a complaint need not distinguish between defendants that had the exact same role in a fraud. We recently addressed this issue in *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016).... We dispensed with this argument, holding: "There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *Id.* A good claim against one defendant did not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts.

*Silingo*, 904 F.3d at 677-78. *See also Underwood v. Future Income Payments, LLC*, No. SA CV 17-1570-DOC (DFMx), 2018 U.S. Dist. LEXIS 233539 at *21-24 (C.D. Cal. Apr. 26, 2018) (lumping is allowed where defendants are "allegedly engaging in the same wrongful

conduct," are "closely related" because of their corporate structure, or "allegedly act in concert"). Here, Plaintiff does not merely lump the Defendants together. Instead, each group of related defendants is identified and their roles are discussed in separate sections (the Wyer Defendants, dkt. 21 at 41-62; the Shields Defendants, *id.* at 62-84; the CodeClouds Defendants, *id.* at 84-103; and Minh Dang, *id.* at 103-107). Within each section, individualized pleadings are made.

With respect to the CodeClouds Defendants, their roles are identified with particularity. There are individualized pleadings as to Saha's activities (dkt. 21 at ¶ 335, 351-356). As for the CodeClouds Defendants generally, it is appropriate to group them because they are closely related entities—so closely related that they describe each other as "offices" and "divisions" of CodeClouds and worked together on servicing the Wyer account. *Underwood*, 2018 U.S. Dist. LEXIS 233539 at *21-24. This is more than enough to satisfy 9(b) where a large number of defendants are alleged to have committed a fraud as a collective unit. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007). And because further knowledge about the nominal legal role of each CodeClouds entity is within their exclusive possession, the 9(b) requirements are relaxed and Plaintiff cannot be expected to plead more than she has. *Ronches*, 2009 U.S. Dist. LEXIS 139975 at *74-75.

**D. This Court has subject matter jurisdiction because Plaintiff has not received all the relief that could be granted.**

**After** the filing of this suit on October 11, 2019, and **after** a copy was sent to support@immortelleyouth.com, dkt. 7 at 4, the Wyer Defendants began issuing refunds to Plaintiff in an effort to moot the case. Those refunds began on October 15, 2019. Ex. 9. But the initial Complaint requested more than just an individual refund: it requested declaratory relief, dkt. 1 at 62; injunctive relief, *id.*; punitive damages, *id.*; restitution, *id.*; attorney's fees, *id.*; and interest, *id.* Mrs. Cummings requested to be appointed the representative of a putative class. *Id.* at 27-30, 62. She has received none of this relief.

In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012)), the Supreme Court held: "A case becomes moot,

however, 'only when it is impossible for a court to grant any effectual relief what-ever to the prevailing party.'" Soon after, in *Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016), the Ninth Circuit held that a case "becomes moot when a plaintiff *actually receives* all of the relief he or she could receive on the claim through further litigation." *Id.* at 1144 (emphasis in original). "[A] district court should decline to enter a judgment affording complete relief on a named plaintiff's individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification." *Id.* at 1146-48; *see also Gomez v. Campbell-Ewald Co.*, No. CV 10-2007 DMG (AJWx), 2016 U.S. Dist. LEXIS 109248 (C.D. Cal. June 3, 2016); *In re Big Heart Pet Brands Litig.*, No. 18-cv-00861-JSW, 2019 U.S. Dist. LEXIS 229340 (N.D. Cal. Oct. 4, 2019); *Luman v. NAC Mktg. Co., LLC*, No. 2:13-cv-00656-KJM-AC, 2017 U.S. Dist. LEXIS 125498 at *7-8 (E.D. Cal. Aug. 8, 2017). Only a single aspect of the relief has been given here.

### E. Plaintiff has stated a valid claim under the UCL/FAL.

Defendants' UCL/FAL argument fails for the same reason: it focuses on the individual claim. Post-*Chen*, Plaintiff must still be allowed to seek certification. And even Plaintiff's individual UCL/FAL claims have not been mooted because Plaintiff sought injunctive relief. Dkt. 21 at ¶ 438; 520. *Coffelt v. Kroger Co.*, No. EDCV 16-1471 JGB (KKx), 2017 U.S. Dist. LEXIS 231262 at *16-17 (C.D. Cal. Jan. 27, 2017); *see also Luman*, 2017 U.S. Dist. LEXIS 125498 at *7-8; *T. K. v. Adobe Sys.*, No. 17-CV-04595-LHK, 2018 U.S. Dist. LEXIS 65557 at *32-33 (N.D. Cal. Apr. 17, 2018). As to the contention that Plaintiff as an individual needs to identify which Defendant took her money to seek restitution, Defendants do not argue this as to the Class as a whole for good reason: Saha and CodeClouds were receiving a portion of the money taken from the Class as compensation in exchange for helping to run the scam. As such this money belongs "in good conscience" to the Class, is traceable, and can be recovered as restitution. *See Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1082-83 (N.D. Cal. 2012).

### F. Plaintiff satisfies the "transaction" requirement of the CLRA.

Defendants argue that liability under the CLRA is limited to those who engaged in a

direct consumer transaction with Plaintiff, and that she did not identify which Moving Defendant billed her. But this is not the law. "Nothing in the language of the CLRA states that only a defendant who directly engaged in a completed transaction with a plaintiff may be liable to that plaintiff." *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003 U.S. Dist. LEXIS 27912 at \*20-21 (N.D. Cal. Aug. 6, 2003). Instead, the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices...." Cal. Civ. Code § 1760. "[T]he legislature intended the CLRA to cover a wide range of business activities," and not just the direct transaction at issue. *Chamberlan*, 2003 U.S. Dist. LEXIS 27912 at \*21; *see also Herron v. Best Buy Stores, Ltd. P'ship*, No. 12-cv-02103-GEB-JFM, 2013 U.S. Dist. LEXIS 116625 at \*9-10 (E.D. Cal. Aug. 15, 2013) (collecting cases); *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 186, 105 Cal. Rptr. 3d 704 (2010); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 867-870, 118 Cal. Rptr. 2d 770 (2002) (interpreting "transaction" broadly to cover "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful"); *Makaeff v. Trump Univ., Ltd. Liab. Co.*, 145 F. Supp. 3d 962, 978-80 (S.D. Cal. 2015).

There is no dispute there was a consumer transaction. Moving Defendants engaged in unfair and unlawful business practices which injured Mrs. Cummings, *see supra*, and that is enough. *Wang*, 97 Cal. App. 4th at 867-870; *see also* dkt. 21 at ¶ 346-348 (alleging Saha and Long Tail ran the US operations of CodeClouds and were involved in creating the websites used to run the merchant account scheme). Mr. Saha holds himself out as the "founder and CEO" who manages "all aspects" of CodeClouds' international operations. Ex. 1. He managed and controlled the human beings engaging in the transactions, and thus he is liable for them. *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."). Defendants also fail to address aiding and abetting/conspiracy, which subject them to liability for one another's conduct.

### G. A post-suit refund cannot moot Plaintiff and the Class's CLRA claims.

Defendants argue that the post-suit refund mooted Plaintiff's claim because of Cal. Civ. Code §1782(b). But this provision only applies to an "action for damages," and thus cannot moot Plaintiff's CLRA claims for injunctive relief or attorney's fees. *Gonzales v. CarMax Auto Superstores, Ltd. Liab. Co.*, 845 F.3d 916, 917-18 (9th Cir. 2017). It further cannot moot the Class claims because there is an entirely separate provision—Cal. Civ. Code §1782(c)—which governs claims in class actions. The California Supreme Court specifically rejected this argument. *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 200 Cal. Rptr. 38, 676 P.2d 1060 (1984). It held that sending a CLRA demand letter preserved this right, regardless of any later effort to remedy the individual plaintiff's claim. *Id.* at *594-595; *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 642, 88 Cal. Rptr. 3d 859, 865, 200 P.3d 295, 300 (2009) ("once a person has been the victim of a proscribed practice under the CLRA and makes a demand on behalf of a class, remedying the plaintiff's individual complaint does not disqualify her as class representative"); *Polo v. Innoventions Int'l, Ltd. Liab. Co.*, 833 F.3d 1193, 1198-99 (9th Cir. 2016). Here, Plaintiff filed this class action lawsuit on 10/11/2019. She sent initial CLRA letters on 10/11-12/2019, and later letters on 5/26/2020. Ex. 15. Both the suit and the letters sought to represent a class. Moving Defendants do not deny receiving them. Defendants have never satisfied the requirements of Cal. Civ. Code §1782(c), which include notifying class members and giving them a chance to request a remedy.[2]

### H. Plaintiff properly pled the RICO claim.

Defendants argue RICO has not been adequately pled. But this is incorrect. First, Defendants suggest that there is a distinctiveness issue. The enterprise-person distinction requirement is that "a corporate defendant cannot be both the RICO person and the RICO enterprise...." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992). But where

---

[2] The Moving Defendants were plainly among the Does in the original Complaint—it identified the Does as including "the individuals, corporations, or entities responsible for selling, advertising, shipping, and manufacturing the Immortelle Youth products...." Dkt. 1 at ¶ 12.

individual officers are named as the persons, and corporations are the enterprise, there is no distinctiveness issue. *Id.* For the CodeClouds Enterprise—Brian Hill/Kinkar Saha as the persons, and the companies as the enterprise—this is satisfied. Dkt. 21 at ¶ 528. The Immortelle Enterprise (*see* dkt. 21 at ¶ 529) satisfies this requirement because it is an association-in-fact enterprise and not a formal corporation. *River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461-62 (9th Cir. 1992) ("All the circuits that have considered the question have concluded that a plaintiff is free to name all members of an association-in-fact enterprise as individual defendants."). Defendants argue Plaintiff must plead a hierarchy to the enterprise, how it was managed, and how decisions were made. Dkt. 54 at 20. RICO has no such requirement. *Odom v. Microsoft Corp.*, 486 F.3d 541, 551-52 (9th Cir. 2007). And Plaintiff has plead a hierarchy and how decisions were made, as discussed *supra*. *See* Dkt. 21 at ¶ 77-78; 347-356. Defendants' claims that Mr. Saha's only alleged role was designing the software are false. He is alleged to have negotiated partnerships to assist CodeClouds clients in running their scams, dkt. 21 at ¶ 352; to have been a partner in the founding and operation of Long Tail (the U.S. division of CodeClouds), *id.* at ¶ 348; to have selected integration partners and software features crucial to the scam, *id.* at ¶ 354; to have attended conferences seeking scammers as clients, *id.* at ¶ 354; and to have assisted in providing load balancing functionality key to the scam, *id.* at ¶ 353, 356.

Defendants' arguments on lumping, that Plaintiffs do not identify the sales page, and that the Facebook advertisement was not pled are all addressed *supra* in the 9(b) section. Defendants' argument that the predicate acts have not been pled with particularity is likewise incorrect. Plaintiff cannot be expected to plead details as to every mailing or every advertisement sent to the class, but must provide examples and plead with particularity as to the Plaintiff's individual claim: "While this scheme is understandably alleged broadly as to the putative class's claims, it is alleged in sufficient detail as to Plaintiff, and satisfies Rule 9(b)." *Perez v. DirecTV Grp. Holdings, LLC*, No. 8:16-cv-01440-JLS-DFM, 2019 U.S. Dist. LEXIS 209405 at *11 (C.D. Cal. July 23, 2019). There, as here, the complaint was "replete with examples of the Defendants employing the mails and wires to effectuate the

scheme." *Id.* Predicate acts are pled with particularity where "Plaintiffs identify the exact documents containing the alleged misrepresentations, explain that these documents were sent directly to borrowers, detail the misrepresentations in those letters, and state how those misrepresentations were deceptive." *In re Wells Fargo Ins. Mktg. & Sales Practices Litig.*, No. SAML 17-02797 AG (KESx), 2018 U.S. Dist. LEXIS 230306 at *37-38 (C.D. Cal. Dec. 14, 2018). Plaintiff did here throughout with specific elements pled at ¶ 447-466.

## I. A private right of action exists under the California Automatic Renewal Law.

There is a split in on the question of whether the California Automatic Renewal Law ("ARL") provides a private cause of action. Defendants are correct that *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058 (S.D. Cal. 2018) found the ARL did not create a separate, private cause of action. Others have found that the ARL does create a private right of action. *Kissel v. Code 42 Software, Inc.*, No. SACV 15-1936-JLS (KESx), 2016 U.S. Dist. LEXIS 184368, at *14-20 (C.D. Cal. Apr. 14, 2016); *see also In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 126 (D. Conn. 2014) (interpreting the ARL to provide a private cause of action); *Noll v. eBay, Inc.*, No. 5:11-CV-04585-EJD, 2013 U.S. Dist. LEXIS 76323 at *18-19 (N.D. Cal. May 30, 2013). And even *Lopez* agrees there is still a remedy under the UCL borrowed law doctrine. *Lopez*, 307 F. Supp. 3d at 1071. Plaintiff pled a UCL unlawful violation for violations of the ARL, which should proceed even if the ARL claim is dismissed as an independent cause of action. Dkt. 21 at 124 ¶ 445.

## J. Plaintiff acknowledges binding 9th Circuit authority on the EFTA claim.

Plaintiff acknowledges that this Court is bound by a panel decision of the 9th Circuit in *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) as to whether Plaintiff has standing to sue under EFTA. Plaintiff believes that this case was wrongly decided, in part because of the subsequent decision in *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015) which adopted the class certification approach, and because of *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017), which allowed a class representative whose bank account had not been billed to represent a class whose accounts had, despite different injuries. Plaintiff seeks to preserve its right to appeal/seek a change in the law.

**K. Plaintiff properly pled a nationwide consumer class.**

**1. Defendants failed to conduct a choice-of-law analysis.**

Defendants seek to dismiss the nationwide state law claims, but fail to address a threshold question: whether California law can be applied nationwide. It is Defendants' threshold burden to conduct a choice-of-law analysis: "By default, California courts apply California law 'unless a party litigant timely invokes the law of a foreign state,' in which case it is 'the foreign law proponent' who must 'shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.'" *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 561 (9th Cir. 2019) (citations omitted). Defendants were required to conduct a three-step analysis. *Id.* at 562. "If the objectors fail to meet their burden at any step in the analysis, the district court 'may properly find California law applicable without proceeding' to the rest of the analysis." *Id.* (citations omitted). Defendants have not even attempted this analysis, *see* dkt. 68 at 23-24—and they cannot do so in a reply brief. *United States v. Wilde,* 74 F. Supp. 3d 1092, 1099-1100 (N.D. Cal. 2014). This failure is the reverse of *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), whose precedential value the 9th Circuit has recently limited. *Espinosa,* 926 F.3d at 563. Here, unlike *Mazza* (where the plaintiffs made various concessions that bound the court), it is Defendants who have failed to meet their burden of conducting a choice of law analysis and applying it to the facts. Other courts in this District have permitted nationwide classes post-*Mazza* where Defendants failed to meet their burden. *See Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 U.S. Dist. LEXIS 50600 at *9 (C.D. Cal. Apr. 9, 2014).

**2. This is a class certification issue, not a standing issue.**

Defendants argue based on *Mazza* that Plaintiff lacks standing to pursue a nationwide class. This Court has rejected identical arguments. *Allen v. Hylands, Inc.*, No. CV 12-01150 DMG (MANx), 2012 U.S. Dist. LEXIS 61606 at *4-7 (C.D. Cal. May 2, 2012). In *Allen*, this Court held that "choice of law is not the same thing as standing" and that "*Mazza* explicitly left open the possibility that a court could certify subclasses grouped around

'materially different bodies of state law.'" *Id.* at *5-6 (quoting *Mazza*, 666 F.3d at 594). This reasoning has only become stronger since the 9th Circuit adopted the "class certification approach" in *Melendres*. This Court itself specifically applied *Melendres* to similar cases and rejected these arguments. *See Robinson v. Unilever United States*, No. CV 17-3010-DMG (AJWx), 2018 U.S. Dist. LEXIS 225254 at *8-11 (C.D. Cal. June 25, 2018) ("If and when Plaintiff moves for class certification, then the Court will determine whether dissimilarities between Plaintiff's California law claims and those of non-resident putative class members preclude Plaintiff from asserting the latter in a representative capacity."); *see also Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG (JCx), 2018 U.S. Dist. LEXIS 228058 at *16 n.9 (C.D. Cal. June 11, 2018). Defendants also ignore a key distinction: there will be a nationwide class in this case regardless because Plaintiff has asserted federal law RICO claims, dkt. 21 at 140-147, and thus the nationwide discovery cited by their cases as a potential burden will occur anyway. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 955-56 (N.D. Cal. 2018).

### L. Conspiracy and Aiding and Abetting are valid causes of action.

Defendants argue that the Conspiracy and Aiding and Abetting causes of action are not independent causes. To the extent they argue that some other tort underlying these causes of action must survive, this is correct. To the extent Defendants argue that conspiracy and aiding and abetting cannot be standalone causes of action, this is incorrect. *See Sprewell v. Golden State Warriors*, Nos. 99-15602, 99-17186, 2001 U.S. App. LEXIS 20434 at *23-24 (9th Cir. Dec. 28, 2001); *Am. Gen. Life Ins. Co. v. Fernandez*, No. CV 09-03198 DDP (SSx), 2009 U.S. Dist. LEXIS 139629 at *10 (C.D. Cal. Oct. 20, 2009); *Wu v. Or. Trail Corp.*, No. CV 19-4162 PSG (JPRx), 2019 U.S. Dist. LEXIS 211132 at *6-7 (C.D. Cal. July 31, 2019).

### III.   CONCLUSION

This court should deny Defendants' motion to dismiss. But if it does not, there is no basis to dismiss with prejudice, and leave to amend should be granted because Plaintiff can address any issues with more particularity and should be given a chance to do so.

1

2
    DATED: September 25, 2020              **KNEUPPER & COVEY, PC**

3

4
                                      /s/Kevin M. Kneupper

5
                                      Kevin M. Kneupper, Esq.

6
                                      *Attorneys for Plaintiff*
                                      *Stephanie Cummings*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28